1
2
3
4
5
6
7
8               IN THE UNITED STATES DISTRICT COURT

9               FOR THE EASTERN DISTRICT OF CALIFORNIA

10   RAYMOND D. JACKSON, SR.,

11               Plaintiff,              No. CIV S-06-1893 LKK DAD P

12        vs.

13   NADIM KHOURY, et al.,               ORDER AND

14               Defendants.             FINDINGS AND RECOMMENDATIONS

15   _____/

16          Plaintiff is a state prisoner confined at California Medical Facility proceeding pro

17   se with a civil rights action seeking relief under 42 U.S.C. § 1983.  Pending before the court is a

18   motion for summary judgment brought pursuant to Rule 56 of the Federal Rules of Civil

19   Procedure on behalf of defendants Andreasen, Khoury, and Schwartz.  Plaintiff has filed a timely

20   opposition, in which he requests to voluntarily dismiss defendants Khoury and Schwartz,[1] and

21   defendants have filed a timely reply.[2]

22   _____

23          [1] Pursuant to Fed. R. Civ. P. 41(a), plaintiff's request to voluntarily dismiss defendants
     Khoury and Schwartz shall be honored, and these defendants will be dismissed from this action.
24   For purposes of resolving the pending motion for summary judgment, the court will only address
     the parties' arguments as they relate to defendant Andreasen.
25
          [2] The undersigned would like to express appreciation to both defense counsel Kamberian
26   and plaintiff Jackson for the thorough briefing in this matter.

                                              1

**BACKGROUND**

In his amended complaint plaintiff alleges as follows.  During the 1980's, plaintiff suffered from kidney failure.  Upon his arrival at California Medical Facility ("CMF"), he requested that CMF doctors add him to the kidney-transplant list.   However, the doctors refused, citing various excuses.  After years of civil litigation in state court, in 1987, plaintiff received a kidney from his brother and began immunosuppressive therapy to prevent his body from rejecting the kidney.  (Am. Compl. at 4-6.)

In 1999, several doctors at CMF dictated single-cell chronos for plaintiff because of his compromised immune system.  Although prison officials placed him in a single cell at that time, plaintiff alleges that defendant Andreasen subsequently reversed those orders in retaliation for plaintiff's civil litigation in this court against other CMF doctors.  Plaintiff notes that at the time he was still taking medication to prevent his body from rejecting the kidney, but defendant Andreasen nevertheless authorized him for double-cell status.  (Am. Compl. at 6.)

In 2002, prison officials placed plaintiff on a "lifer single-cell list."  Inmates on that list are housed in a unit designated for inmates infected with the HIV virus.  By 2004, plaintiff was No. 13 on the list, however, defendants passed over his name as a form of retaliation for his previous litigation.  (Am. Compl. 7.)

Defendants have been deliberately indifferent to plaintiff's medical needs by refusing to house him in a single cell in violation of his rights under the Eighth Amendment. (Am. Compl. at 8-11.)  Defendants have also discriminated against plaintiff by granting similarly-situated inmates single-cell status ahead of him in violation of the Equal Protection Clause of the Fourteenth Amendment.  (Id. at 12-13.)  Finally, defendants have retaliated against plaintiff for pursuing litigation against CMF doctors in violation of the First Amendment.  (Id. at 14-24.)  Plaintiff requests declaratory, injunctive, and monetary relief.  (Id. at 24-25.)

/////

/////

2

1   **SUMMARY JUDGMENT STANDARDS UNDER RULE 56**

2          Summary judgment is appropriate when it is demonstrated that there exists "no

3   genuine issue as to any material fact and that the moving party is entitled to a judgment as a

4   matter of law."  Fed. R. Civ. P. 56(c).

5                  Under summary judgment practice, the moving party
                always bears the initial responsibility of informing the district court
6                of the basis for its motion, and identifying those portions of "the
                pleadings, depositions, answers to interrogatories, and admissions
7                on file, together with the affidavits, if any," which it believes
                demonstrate the absence of a genuine issue of material fact.

8

9   Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the

10  nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

11  judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers

12  to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered,

13  after adequate time for discovery and upon motion, against a party who fails to make a showing

14  sufficient to establish the existence of an element essential to that party's case, and on which that

15  party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of proof

16  concerning an essential element of the nonmoving party's case necessarily renders all other facts

17  immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as

18  whatever is before the district court demonstrates that the standard for entry of summary

19  judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

20          If the moving party meets its initial responsibility, the burden then shifts to the

21  opposing party to establish that a genuine issue as to any material fact actually does exist.  See

22  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

23  establish the existence of this factual dispute, the opposing party may not rely upon the

24  allegations or denials of its pleadings but is required to tender evidence of specific facts in the

25  form of affidavits, and/or admissible discovery material, in support of its contention that the

26  dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party

must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

/////

1    On April 3, 2007, the court advised plaintiff of the requirements for opposing a

2    motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154

3    F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

4    **OTHER APPLICABLE LEGAL STANDARDS**

5    I.  Civil Rights Act Pursuant to 42 U.S.C. § 1983

6    The Civil Rights Act under which this action was filed provides as follows:

7    Every person who, under color of [state law] . . . subjects, or causes
     to be subjected, any citizen of the United States . . . to the
8    deprivation of any rights, privileges, or immunities secured by the
     Constitution . . . shall be liable to the party injured in an action at
9    law, suit in equity, or other proper proceeding for redress.

10   42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the

11   actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See

12   Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362

13   (1976).  "A person 'subjects' another to the deprivation of a constitutional right, within the

14   meaning of  § 1983, if he does an affirmative act, participates in another's affirmative acts or

15   omits to perform an act which he is legally required to do that causes the deprivation of which

16   complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

17   Moreover, supervisory personnel are generally not liable under § 1983 for the

18   actions of their employees under a theory of respondeat superior and, therefore, when a named

19   defendant holds a supervisorial position, the causal link between him and the claimed

20   constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862

21   (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).  Vague and conclusory

22   allegations concerning the involvement of official personnel in civil rights violations are not

23   sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

24   II.  Eighth Amendment and Adequate Medical Care

25   The unnecessary and wanton infliction of pain constitutes cruel and unusual

26   punishment prohibited by the Eighth Amendment.  Whitley v. Albers, 475 U.S. 312, 319 (1986);

1   Ingraham v. Wright, 430 U.S. 651, 670 (1977); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976).

2   In order to prevail on a claim of cruel and unusual punishment, a prisoner must allege and prove

3   that objectively he suffered a sufficiently serious deprivation and that subjectively prison officials

4   acted with deliberate indifference in allowing or causing the deprivation to occur.  Wilson v.

5   Seiter, 501 U.S. 294, 298-99 (1991).

6          Where a prisoner's Eighth Amendment claims arise in the context of medical

7   care, the prisoner must allege and prove "acts or omissions sufficiently harmful to evidence

8   deliberate indifference to serious medical needs."  Estelle, 429 U.S. at 106.  An Eighth

9   Amendment medical claim has two elements:  "the seriousness of the prisoner's medical need

10  and the nature of the defendant's response to that need."  McGuckin v. Smith, 974 F.2d 1050,

11  1059 (9th Cir. 1991), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133

12  (9th Cir. 1997) (en banc).

13         A medical need is serious "if the failure to treat the prisoner's condition could

14  result in further significant injury or the 'unnecessary and wanton infliction of pain.'"

15  McGuckin, 974 F.2d at 1059 (quoting Estelle, 429 U.S. at 104).  Indications of a serious medical

16  need include "the presence of a medical condition that significantly affects an individual's daily

17  activities."  Id. at 1059-60.  By establishing the existence of a serious medical need, a prisoner

18  satisfies the objective requirement for proving an Eighth Amendment violation.  Farmer v.

19  Brennan, 511 U.S. 825, 834 (1994).

20         If a prisoner establishes the existence of a serious medical need, he must then

21  show that prison officials responded to the serious medical need with deliberate indifference.

22  Farmer, 511 U.S. at 834.  In general, deliberate indifference may be shown when prison officials

23  deny, delay, or intentionally interfere with medical treatment, or may be shown by the way in

24  which prison officials provide medical care.  Hutchinson v. United States, 838 F.2d 390, 393-94

25  (9th Cir. 1988).  Before it can be said that a prisoner's civil rights have been abridged with regard

26  to medical care, however, "the indifference to his medical needs must be substantial.  Mere

6

1   'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action."

2   Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at

3   105-06).  See also Toguchi v. Soon Hwang Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) ("Mere

4   negligence in diagnosing or treating a medical condition, without more, does not violate a

5   prisoner's Eighth Amendment rights."); McGuckin, 974 F.2d at 1059 (same).  Deliberate

6   indifference is "a state of mind more blameworthy than negligence" and "requires 'more than

7   ordinary lack of due care for the prisoner's interests or safety.'"  Farmer, 511 U.S. at 835

8   (quoting Whitley, 475 U.S. at 319).

9          Delays in providing medical care may manifest deliberate indifference.  Estelle,

10  429 U.S. at 104-05.  To establish a claim of deliberate indifference arising from delay in

11  providing care, a plaintiff must show that the delay was harmful.  See Berry v. Bunnell, 39 F.3d

12  1056, 1057 (9th Cir. 1994); McGuckin, 974 F.2d at 1059; Wood v. Housewright, 900 F.2d 1332,

13  1335 (9th Cir. 1990); Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989); Shapley v.

14  Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985).  In this regard, "[a]

15  prisoner need not show his harm was substantial; however, such would provide additional

16  support for the inmate's claim that the defendant was deliberately indifferent to his needs."  Jett

17  v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).  See also McGuckin, 974 F.2d at 1060.

18         Finally, mere differences of opinion between a prisoner and prison medical staff

19  as to the proper course of treatment for a medical condition do not give rise to a § 1983 claim.

20  Toguchi, 391 F.3d at 1058; Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); Sanchez v.

21  Vild, 891 F.2d 240, 242 (9th Cir. 1989); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir.

22  1981).

23  III.  Fourteenth Amendment and Equal Protection

24         Equal protection is relevant with respect to classifications that impermissibly

25  operate to disadvantage a suspect class or improperly interfere with an individual's exercise of a

26  fundamental right.  See City of Cleburne, Tex. v. Cleburne Living Center, 473 U.S. 432, 439

(1985) (holding that the Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike").  Fourteenth Amendment protections, including equal protection, extend to state prisons.  Walker v. Gomez, 370 F.3d 969, 974 (9th Cir. 2004).  However, "a classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity."  Heller v. Doe, 509 U.S. 312, 319 (1993).  See also Turner v. Safley, 482 U.S. 78, 89 (1987) ("[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.").

IV.  First Amendment and Retaliation

Both the initiating of litigation before the courts and the filing of administrative grievances are protected activities, and it is impermissible for prison officials to retaliate against prisoners for engaging in these activities.  See Rhodes v. Robinson, 408 F.3d 559, 568 (9th Cir. 2005).  As the Ninth Circuit has explained:

> Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.

Rhodes, 408 F.3d at 567-68.  See, e.g., Valandingham v. Bojorquez, 866 F.2d 1135, 1137-38 (9th Cir. 1989) (allegations that defendants labeled plaintiff a "snitch" in front of other prisoners thereby subjecting him to inmate retribution supported a retaliation claim under § 1983).

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

I.  Defendants' Statement of Undisputed Facts and Evidence

Defendants' statement of undisputed facts is supported by citations to the declarations of defendants Andreasen, Khoury, and Schwartz, as well as to plaintiff's amended complaint and declarations by defense counsel Kamberian, Acting Chief Medical Officer N.

/////

1    Aguilera, Litigation Coordinator B.C. Williams, and Staff Information Systems Analyst C.

2    Montano.

3              In this regard, the evidence submitted by defendants establishes the following.

4    Plaintiff is a kidney-transplant patient on immunosuppressive therapy.  He takes anti-rejection

5    medication to prevent his body from rejecting his kidney transplant.  Plaintiff's kidney transplant

6    surgery occurred more than twenty years ago.  Plaintiff also suffers from a number of other

7    medical conditions, including the Human T-lymphotrophic Virus (Leukemia) and post-traumatic

8    stress disorder as a result of a sexual assault that occurred in 1992.  (Andreasen Decl. at 2;

9    Khoury Decl. at 2.)

10             Between 1996 and 2000, plaintiff had five medical chronos related to single-cell

11   housing: a September 19, 1996 chrono which referred plaintiff for single-cell housing; a May 24,

12   1999 chrono which recommended plaintiff's placement in the G-3 Unit if possible; and January

13   16, 1999, October 19, 1999, and September 12, 2000 chronos recommending single-cell

14   placement as long as custody and institutional safety issues were met.  (Andreasen Decl. at 2.)

15             Defendant Andreasen co-signed the January 16, 1999, and May 24, 1999 medical

16   chronos, recommending that plaintiff be placed in single-cell status.  Defendant Andreasen also

17   authored an outpatient interdisciplinary note on September 16, 1999, recommending that plaintiff

18   remain in single-cell housing.  (Andreasen Decl. at 2 & Attach. 2.)

19             From July 20, 1999, through March 28, 2001, plaintiff stayed in the G-3 Unit in

20   single-cell 327L.  While plaintiff was there, however, the mission of the G-3 Unit changed.  The

21   G-3 Unit increased its staffing to meet the needs of patients requiring a higher level of care.  For

22   example, the G-3 Unit was staffed with one registered nurse, one licensed vocation nurse, and

23   one hospital aid sixteen hours per day.  Plaintiff did not need the level of care offered on the G-3

24   Unit after the mission change, so defendant Andreasen authored a physician's order stating that

25   prison officials could transfer plaintiff out of the G-3 Unit.  Plaintiff was in remission at that time

26   /////

1   and was regularly being seen by the consulting Nephrologist and his primary care physician.

2   (Andreasen Decl. at 2 & Attachs. 3, 4 & 5-5.)

3          In addition, community standards and medical thinking had changed since

4   plaintiff received his initial medical chronos recommending single-cell housing.  Specifically,

5   current medical thinking recommends reverse isolation (i.e., confining a patient to his own cell)

6   in very limited circumstances.  Plaintiff still has a compromised immune system, but he does not

7   warrant reverse isolation or confinement to a cell by himself.  His medications have improved his

8   immune system to the extent that it is not as compromised as it once was.  (Andreasen Decl. at 3;

9   Khoury Decl. at 2.)

10          On April 14, 2005, defendant Andreasen responded to plaintiff's Appeal No. 05-

11   476, in which plaintiff requested a single cell.  Defendant Andreasen informed him that the

12   mission on the G-3 Unit had changed and that he did not need the level of care offered on the G-

13   3 Unit since he was in remission.  Defendant Andreasen also informed plaintiff that his medical

14   issues were reviewed prior to his re-housing and that no medical necessity existed requiring his

15   housing in a single cell.  (Andreasen Decl. at 3-4 & Attach. 5-5.)

16          Defendant Andreasen is aware of the "lifer's program" on Unit IV that plaintiff

17   refers to in his amended complaint.  It is a custody program where prisoners with life sentences

18   can be housed in their own cell.  Defendant Andreasen is not familiar with the details or criteria

19   for that program but believes it does not have a medical component or criteria.  In response to

20   plaintiff's Appeal No. 05-476, in which plaintiff referenced the "lifer's program" as an

21   alternative to G-3 single-cell housing, defendant Andreasen informed plaintiff that the "lifer's

22   program" was not something he could address.  (Andreasen Decl. at 4.)

23          In previous years, Unit IV was commonly referred to as the "HIV wing" because

24   most inmates on the unit were infected with the HIV virus.  However, as noted above,

25   community standards and current medical thinking recommends reverse isolation in very limited

26   circumstances, including for patients infected with the HIV virus.  Patients with HIV are not

1 confined to Unit IV or in single cells and can now be found throughout the housing units at CMF.

2 (Andreasen Decl. at 3.)

3        An individual with a compromised immune system like plaintiff would have his

4 white blood cell count monitored at a renal clinic.  If the patient's white blood cell count fell

5 below a certain number, the renal clinic would advise prison officials to isolate him.  Plaintiff has

6 visited the renal clinic regularly.  A review of plaintiff's medical file then and now indicates that

7 there are no recent recommendations in his medical records from the renal clinic to isolate him,

8 and there is no medical need to house him in a single cell.  (Andreasen Decl. at 3.)

9        Defendant Andreasen is aware of plaintiff's belief that his prior litigation has

10 affected his housing status.  Defendant Andreasen declares that he has no recollection of any

11 lawsuit plaintiff previously filed against CDCR or CMF doctors, and he never told anyone that he

12 would not provide plaintiff with a single-cell chrono because of any prior litigation.  Defendant

13 Andreasen further declares that a patient's past litigation would never affect his medical

14 decision-making process or treatment, and it did not in this case.  (Andreasen Decl. at 4.)

15 II. <u>Defendants' Arguments</u>

16        Defense counsel argues that under the undisputed facts of this case defendant

17 Andreasen is entitled to summary judgment in his favor because there is no evidence from which

18 a reasonable jury could conclude that defendant Andreasen violated plaintiff's rights under the

19 First, Eighth, or Fourteenth Amendments.  (Defs.' Mot. for Summ. J. at 2.)

20        First, defense counsel argues that plaintiff cannot establish that the defendant was

21 deliberately indifferent to his medical needs.  Specifically, none of plaintiff's medical conditions

22 necessitate single-cell housing, and while plaintiff may disagree with the defendant's decision, he

23 is not qualified or entitled to dictate his treatment options.  (Defs.' Mot. for Summ. J. at 5-6.)

24        Second, counsel argues that plaintiff cannot bring a suit seeking prospective

25 injunctive relief for medical care because the issue is already subject to class action court

26 enforcement in <u>Plata v. Schwarzenegger</u>.  According to the defense, to the extent plaintiff seeks

1   injunctive relief, he should be directed to class counsel in <u>Plata</u>. (Defs.' Mot. for Summ. J. at 6-8

2   & Ex. A.)

3           Third, counsel argues that plaintiff cannot establish a claim for retaliation because

4   he cannot show a causal link with any protected activity, and the defendant had proper reasons

5   for denying him single-cell housing. According to defense counsel, plaintiff will not be able to

6   demonstrate that defendant Andreasen was substantially motivated to take adverse action against

7   him because of prior litigation. In fact, defendant Andreasen has affirmatively denied taking any

8   type of retaliatory action. (Defs.' Mot. for Summ. J. at 8-10.)

9           Fourth, defense counsel argues that plaintiff's claims against defendant Andreasen

10  that occurred prior to 2002 are barred by the statute of limitations. Specifically, to the extent that

11  plaintiff's claims are directed at defendant Andreasen's decision in January 2001, authorizing his

12  transfer out of the G-3 Unit, they are barred by the applicable three-year limitations period (one-

13  year statutory limit and two-year potential tolling period). (Defs.' Mot. for Summ. J. at 10-11.)

14          Fifth, counsel argues that plaintiff cannot establish an equal protection violation

15  against the defendant. Patients infected with the HIV virus, even if they are similarly situated to

16  plaintiff, are not confined in single cells and plaintiff has no general right to be housed in any

17  particular prison or cell. (Defs.' Mot. for Summ. J. at 11-12.)

18          Finally, defense counsel argues that defendant Andreasen is entitled to qualified

19  immunity because he did not violate any of plaintiff's constitutional rights and, even if mistaken

20  from a constitutional viewpoint, a person in the defendant's shoes could have reasonably

21  believed that he acted lawfully because there was no medical necessity for plaintiff to be single-

22  celled. (Defs.' Mot. for Summ. J. at 13-14.)

23  III.  <u>Plaintiff's Opposition</u>

24          Plaintiff's opposition to defendants' motion for summary judgment is supported

25  by his own statement of undisputed facts and a declaration signed by him under penalty of

26  perjury. After laying out a lengthy chronology of his medical history and previous litigation,

1    plaintiff argues that the defendant Andreasen is not entitled to summary judgment because a

2    reasonable jury could conclude that he violated plaintiff's constitutional rights.

3            First, plaintiff argues that defendant Andreasen has been deliberately indifferent to

4    his medical needs and has intentionally exposed him to possible diseases.  Specifically, plaintiff

5    argues that prison officials do not test his potential cellmates for diseases like AIDS, hepatitis A,

6    B, or C, venereal disease, and tuberculosis prior to assigning them to live in close proximity with

7    him.  Plaintiff contends that a prisoner need not wait for an actual injury to occur to allege an

8    Eighth Amendment violation if the defendant has placed him in conditions of confinement that

9    can lead to death or harm.  (Pl.'s Opp'n to Defs.' Mot. for Summ. J. at 18-19.)

10           Second, plaintiff argues that he is not a member of the class in <u>Plata v.</u>

11   <u>Schwarzenegger</u> and that this case has nothing to do with the settlement in that litigation.

12   Plaintiff contends that no settled case should stop him from pursuing litigation when CDCR

13   defendants have violated his constitutional rights.  (Pl.'s Opp'n to Defs.' Mot. for Summ. J. at

14   20.)

15           Third, plaintiff argues that defendant Andreasen did in fact retaliate against him.

16   Plaintiff contends that simply because defendant Andreasen affirmatively denies engaging in

17   retaliatory conduct against him does not mean that it did not take place.  (Pl.'s Opp'n to Defs.'

18   Mot. for Summ. J. at 20.)

19           Fourth, plaintiff argues that his claims against defendant Andreasen are not barred

20   by the statute of limitations because his actions fall under the continuing violations doctrine.

21   According to plaintiff, defendant Andreasen's actions are not limited to isolated acts but have

22   been ongoing and continue to take place through the present date.  (Pl.'s Opp'n to Defs.' Mot. for

23   Summ. J. at 21.)

24           Finally, plaintiff argues that defendant Andreasen is not entitled to qualified

25   immunity.  Specifically, plaintiff argues that the defendant knowingly broke the law and knew

26   exactly what he was doing when he rescinded all single-cell chronos with respect to plaintiff.

1  Plaintiff contends that the chronos were both medically and psychologically necessary.  (Pl.'s

2  Opp'n to Defs.' Mot. for Summ. J. at 21-22.)

3                                                          **ANALYSIS**

4  I.  Plaintiff's Eighth Amendment Claim

5               As an initial matter, the parties do not dispute and the court finds that plaintiff

6  suffers from a serious medical condition as a result of having  received a kidney transplant.

7  Neither party disputes that at all relevant times plaintiff was undergoing immunosuppressive

8  therapy or taking anti-rejection medication to prevent his body from rejecting his kidney

9  transplant.   Nor does either party dispute that plaintiff has also suffered from a history of the

10  Human T-lymphotrophic Virus (Leukemia) and post-traumatic stress disorder.   It is well

11  established that "[t]he existence of an injury that a reasonable doctor or patient would find

12  important and worthy of comment or treatment; the presence of a medical condition that

13  significantly affects an individual's daily activities; or the existence of chronic and substantial

14  pain are examples of indications that a prisoner has a 'serious' need for medical treatment."

15  McGuckin, 974 F.2d at 1059-60.  See also Canell v. Bradshaw, 840 F. Supp. 1382, 1393 (D. Or.

16  1993) (the Eighth Amendment duty to provide medical care applies "to medical conditions that

17  may result in pain and suffering which serve no legitimate penological purpose.").  Here,

18  plaintiff's medical records, as well as the observations and treatment recommendations by

19  several doctors including defendant Andreasen, compel the conclusion that plaintiff's medical

20  condition is a serious one.  Accordingly, resolution of the pending motion for summary judgment

21  with regard to plaintiff's Eighth Amendment claim hinges on whether defendant Andreasen

22  responded to plaintiff's serious medical condition with deliberate indifference.  Farmer, 511 U.S.

23  at 834; Estelle, 429 U.S. at 106.

24               The court finds that defendant Andreasen has borne his initial responsibility of

25  demonstrating that there is no genuine issue of material fact with respect to the adequacy of the

26  medical care provided to plaintiff.  Specifically, defendant's evidence demonstrates that prison

1    medical personnel have issued at least five single-cell housing chronos for plaintiff as indicated

2    for his serious medical condition.  Defendant Andreasen specifically co-signed two of the

3    medical chronos and authored an outpatient interdisciplinary note recommending that plaintiff

4    remain in single-cell housing.  Although defendant Andreasen also authored an order allowing

5    plaintiff to be transferred out of the G-3 Unit in 2001, by that time plaintiff's anti-rejection

6    medication had sufficiently strengthened his immune system to allow such a transfer.  In

7    addition, prevailing medical thought as well as current community standards recommended

8    reverse isolation in very limited circumstances.  Finally, the mission of the G-3 Unit changed to

9    meet the needs of patients that required a higher level of care than that required by plaintiff.

10   Based on a review of plaintiff's medical records, plaintiff did not exhibit a medical need

11   requiring prison officials to house him in isolation on the G-3 Unit or in any other single cell.

12   (Andreasen Decl. 2-4.)  Thus, the burden shifts to plaintiff to establish the existence of a genuine

13   issue of material fact precluding summary judgment in defendant's favor.

14           The court has considered plaintiff's opposition to the pending motion for

15   summary judgement as well as his amended complaint, statement of undisputed facts, and

16   declaration.  The undersigned finds that plaintiff has failed to submit any evidence establishing a

17   legitimate dispute as to a genuine issue of material fact.  In this regard, plaintiff contends that the

18   defendant was deliberately indifferent to his medical needs because he intentionally exposed him

19   to possible contagious diseases from potential cellmates.  It is understandable that the plaintiff

20   would be concerned regarding exposure to possible diseases given his compromised immune

21   system.  However, plaintiff's belief that defendant Andreasen should have chose a different

22   course of treatment with respect to his housing assignment amounts to a mere difference of

23   opinion.  Of course, mere differences of opinion between a prisoner and prison medical staff as

24   to proper medical care does not give rise to a § 1983 claim.  Jackson, 90 F.3d at 332; Sanchez,

25   891 F.2d at 242; Franklin, 662 F.2d at 1344; Fleming v. Lefevere, 423 F. Supp. 2d 1064, 1070

26   (C.D. Cal. 2006) ("Plaintiff's own opinion as to the appropriate course of care does not create a

triable issue of fact because he has not shown that he has any medical training or expertise upon which to base such an opinion.").  Similarly, to the extent that plaintiff relies on previously expressed opinions or chronos issued by other doctors with respect to his housing assignment, a difference of medical opinion between doctors likewise does not give rise to a constitutional violation.  See, e.g., Toguchi, 391 F.3d at 1059-60 ("Dr. Tackett's contrary view was a difference of medical opinion, which cannot support a claim of deliberate indifference."); Sanchez, 891 F.2d at 242 (difference of opinion between medical personnel regarding the need for surgery does not amount to deliberate indifference to a prisoner's serious medical needs); Samonte v. Bauman, No. 06-16607, 2008 WL 176462 (9th Cir. Jan. 18, 2008) ("Dr. Bauman's refusal to authorize cataract surgery after another doctor determined that such surgery was an option was a 'difference of medical opinion,' insufficient by itself to raise a triable issue of deliberate indifference.");[3] Bridges v. Runnels, No. CIV S-04-0274 FCD CMK, 2007 WL 1395095 at **3-5 (E.D. Cal. May 10, 2007) (other doctors' recommendations for single-cell status amounted to disagreement over course of treatment and did not establish defendants' course of treatment was medically unacceptable and chosen in disregard for excessive risk to plaintiff's health).

To establish that a difference of medical opinion as to the appropriate course of treatment amounted to deliberate indifference, plaintiff must "show that the course of treatment the doctors chose was medically unacceptable under the circumstances" and that "they chose this course in conscious disregard of an excessive risk to [the prisoner's] health."  Jackson, 90 F.3d at 332.  See also Toguchi, 391 F.3d at 1058.  Here, plaintiff has provided no competent evidence demonstrating that the course of treatment that defendant Andreasen chose with respect to his housing assignment was medically unacceptable under the circumstances.  Jackson, 90 F.3d at 332 ("to prevail . . . Jackson must show that the course of treatment the doctors chose was medically unacceptable under the circumstances.").  Plaintiff is only able to speculate of concerns

---

[3]  Citation to this unpublished decision is proper pursuant to Ninth Circuit Rule 36-3(b).

1  raised by future cellmates and possible scenarios, which may well not transpire.  Nor has plaintiff

2  shown that the defendant chose the course of treatment in conscious disregard of an excessive

3  risk to his health.  Id.  In fact, defendant Andreasen's previous orders, authorizing and

4  recommending that plaintiff receive single-cell status, contradicts plaintiff's subjective belief that

5  the defendant has ignored or failed to respond reasonably to his medical needs.  Moreover,

6  plaintiff has been under regular monitoring from the renal clinic.  There have been no recent

7  recommendations in his medical records to suggest that plaintiff should receive single-cell status

8  out of medical necessity related to his compromised immune system.  Accordingly, for the

9  reasons set forth above, defendant Andreasen is entitled to summary judgment on plaintiff's

10  Eighth Amendment claim.

11  II.  Plaintiff's Equal Protection Claim

12         Defendant Andreasen's alleged actions related to plaintiff's position on the

13  "lifers' program list" on Unit IV implicate neither a suspect class nor a fundamental right and,

14  therefore, the highly deferential rational basis standard applies to plaintiff's equal protection

15  claim.  See Turner, 482 U.S. at 89 ("[W]hen a prison regulation impinges on inmates'

16  constitutional rights, the regulation is valid if it is reasonably related to legitimate penological

17  interests."); see also Johnson v. California, 543 U.S. 499 (2005) (holding that strict scrutiny, and

18  not the reasonableness standard articulated in Turner, applies to prison racial classifications).  Cf.

19  Meachum v. Fano, 427 U.S. 215, 224-25 (1976) (inmates do not have a constitutional right to be

20  incarcerated at a particular correctional facility or in a particular cell or unit within a facility);

21  Rizzo v. Dawson, 778 F.2d 527, 530 (9th Cir. 1985) ("An inmate's liberty interests are

22  sufficiently extinguished by his conviction so that the state may change his place of confinement

23  even though the degree of confinement may be different and prison life may be more

24  disagreeable in one institution than in another.").

25         Here, the court finds that defendant Andreasen has borne his initial burden of

26  demonstrating that there is no genuine issue of material fact with respect to his treatment of

1   plaintiff relative to other similarly-situated inmates.  Specifically, defense counsel has submitted

2   evidence demonstrating that, although defendant Andreasen was aware of the program on Unit

3   IV, he never requested that plaintiff's name be removed from the program list.  (Andreasen Decl.

4   at 4.)  Plaintiff's order on the list was not something defendant Andreasen could address and the

5   program involved custody without a medical component.  (Id.; Khoury Decl. at 3.)  In any event,

6   the other inmates who plaintiff purports were similarly-situated to him, namely inmates infected

7   with the HIV virus, are not isolated in Unit IV in single cells but rather are housed in units

8   throughout CMF.  (Andreasen Decl. at 3; Khoury Decl. at 3.)

9          Defense counsel has also submitted evidence demonstrating that defendant

10   Andreasen's alleged actions, if any, with regards to plaintiff's order on the list for Unit IV

11   housing were reasonably related to legitimate governmental interests.  Turner, 482 U.S. at 89.  As

12   noted above, plaintiff's anti-rejection medication had strengthened his immune system and

13   reverse isolation was no longer medically indicated.  Even assuming defendant Andreasen had

14   any involvement in the lifer's program, his decision to not house plaintiff in a single cell is

15   sufficiently supported by evidence in the record to pass constitutional muster under the highly

16   deferential rational basis standard.  Thus, the burden shifts to plaintiff to establish the existence

17   of a genuine issue of material fact precluding summary judgment in defendant's favor.

18          Plaintiff has not presented any evidence suggesting that defendant Andreasen

19   treated him differently from inmates infected with the HIV virus or any other similarly-situated

20   inmates in connection with his housing assignment.  See Fraley v. United States Bureau of

21   Prisons, 1 F.3d 924, 926 (9th Cir. 1993); see also City of Cleburne, Tex., 473 U.S. at 439 (equal

22   protection requires that all persons similarly situated be treated alike).  In fact, plaintiff's primary

23   complaint is that defendant Andreasen treated him differently from other allegedly similarly-

24   situated inmates because of his previous initiation of litigation.  However, plaintiff's complaint in

25   this regard is one for retaliation, not one based upon the denial of equal protection under the law.

26   Accordingly, because plaintiff has failed to present any evidence that defendant Andreasen

1  treated him differently from other similarly-situated inmates or that defendant Andreasen's

2  treatment of plaintiff was not rationally related to legitimate governmental interests, defendant

3  Andreasen is entitled to summary judgment in his favor with respect to plaintiff's Fourteenth

4  Amendment claim.

5  III.  Plaintiff's Retaliation Claim

6          Defendant Andreasen was prohibited from rescinding plaintiff's single-cell

7  chronos solely in retaliation for plaintiff's exercise of his First Amendment rights.  See Pratt v.

8  Rowland, 65 F.3d 802, 807 (9th Cir. 1995); see also Mt. Healthy City Bd. of Educ. v. Doyle, 429

9  U.S. 274, 283-84 (1977) (retaliation by a state actor for the exercise of a constitutional right is

10  actionable under § 1983 even if the act, when taken for different reasons, would have been

11  proper).  In this case, plaintiff insists that defendant Andreasen authorized his transfer from the

12  G-3 Unit and passed over him on the "lifer's single-cell list" in retaliation for initiating prior

13  litigation against other CMF doctors.  Specifically, plaintiff alleges that, in 2004, when he asked

14  medical technician Donahue who was a direct assistant to defendant Andreasen why he was

15  removed from the Unit IV list of inmates, Donahue allegedly responded:  "You must have

16  forgotten the kidney transplant litigation and settlement, and no matter what, you will never be

17  housed in a single-cell."  Plaintiff further alleges that in a conversation with Dr. Bick, in 2005, he

18  was told:  "You must have piss[ed] somebody off, and they don't want you to have a single-cell."

19  (Am. Compl. at 15-17; Pl.'s Opp'n to Defs.' Mot. for Summ. J. at 15; Pl.'s Decl. at 18-19.)

20          Here, the court finds that defendant Andreasen has borne the initial responsibility

21  of demonstrating that there is no genuine issue of material fact with respect to plaintiff's

22  retaliation claim.  Specifically, defense counsel has submitted evidence that defendant Andreasen

23  had no recollection of plaintiff's lawsuit against CDCR or CMF doctors. Defendant Andreasen

24  authored an order allowing prison officials to transfer plaintiff out of the G-3 Unit in 2001

25  because plaintiff's anti-rejection medication had sufficiently strengthened his immune system,

26  prevailing medical thought as well as current community standards recommended reverse

1    isolation in very limited circumstances, and the G-3 Unit had changed its mission to meet the

2    needs of patients that required a higher level of care than plaintiff.  In addition, although

3    defendant Andreasen was aware of the program on Unit IV, he never requested that plaintiff's

4    name be removed from the program list.  The program involved custody and did not have a

5    medical component.  Plaintiff's order on the list was not something defendant Andreasen had the

6    authority to address.  (Andreasen Decl. at 4.)  Finally, as discussed above, defendant Andreasen's

7    decisions with respect to plaintiff's housing assignment reasonably advanced a legitimate

8    correctional goal.  Contrary to plaintiff's beliefs, the evidence in this case shows that defendant

9    Andreasen's decisions were based on plaintiff's medical status and medical needs (or lack

10   thereof).  Thus, the burden shifts to plaintiff to establish the existence of a genuine issue of

11   material fact precluding summary judgment in defendant's favor.

12          Plaintiff's retaliation claim is based solely on the statements allegedly made to

13   him by a medical technician Donahue and Dr. Bick.  However, neither of the statements establish

14   that the plaintiff's previous pursuit of litigation in this court was a substantial or motivating

15   factor for defendant Andreasen's alleged retaliatory acts.  See Mt. Healthy City Board of Ed., 429

16   U.S. at 285-86.  Even assuming that medical technician Donahue and Dr. Bick made the alleged

17   statements, which themselves must be strained to link plaintiff's previous litigation and

18   defendant Andreasen's alleged retaliatory actions, and that defendant Andreasen was aware of

19   plaintiff's prior litigation, the timing of defendant Andreasen's alleged retaliatory actions

20   strongly suggest that those actions were not motivated by plaintiff's previous lawsuit.  Pratt, 65

21   F.3d at 808 ("timing can properly be considered as circumstantial evidence of retaliatory intent").

22   Specifically, plaintiff settled his previous lawsuit in December 1997.

23          In 1999, defendant Andreasen authorized plaintiff's single-cell status on three

24   occasions for medical reasons.  Not until 2001 did defendant Andreasen allegedly retaliate

25   against plaintiff and authorize prison officials to transfer him from the G-3 Unit and remove his

26   name from the list for Unit IV housing.  That defendant Andreasen would have waited several

1    years to retaliate against plaintiff when he appears to have had the opportunity to do so much

2    earlier is, at best, far-fetched.  Pratt, 65 F.3d at 808 (timing of events led court to conclude that

3    inmate's transfer was not a result of retaliatory reasons).

4            Plaintiff's  belief that defendant Andreasen was not aware of plaintiff's previous

5    lawsuit until 2001, when he issued the order authorizing his transfer from the G-3 Unit, is only

6    supported by sheer speculation.  See Fed. R. Civ. P. 56(e) ("A supporting or opposing affidavit

7    must be made on personal knowledge, set out facts that would be admissible in evidence, and

8    show that the affiant is competent to testify on the matters stated."); Jones v. Blanas, 393 F.3d

9    918, 923 (9th Cir. 2004) (court may consider as evidence in opposition to motion for summary

10   judgment pro se plaintiff's contentions when they are based on personal knowledge and set forth

11   facts that would be admissible in evidence).  Plaintiff has not provided the court with any

12   competent evidence demonstrating that defendant Andreasen was in fact aware of plaintiff's prior

13   litigation.  Nor has plaintiff submitted any evidence indicating when defendant Andreasen

14   allegedly became aware of plaintiff's prior litigation.  For example, plaintiff has not indicated

15   that Dr. McIntosh or any other defendant in plaintiff's previous litigation informed defendant

16   Andreasen of plaintiff's earlier case.  Similarly, plaintiff has not indicated that defendant

17   Andreasen would have learned of plaintiff's previous litigation through other means.  At most,

18   plaintiff speculates that defendant Andreasen learned of his previous litigation at some point after

19   he co-signed plaintiff's single-cell chronos in 1999 but before he authorized plaintiff's transfer

20   from the G-3 Unit in 2001.  Of course, not every allegedly adverse action is sufficient to support

21   a claim of retaliation.  See, e.g., Huskey v. City of San Jose, 204 F.3d 893, 899 (9th Cir. 2000)

22   (retaliation claim cannot rest on the logical fallacy of post hoc, ergo propter hoc, literally, "after

23   this, therefore because of this.").

24           Likewise, plaintiff has not provided the court with any evidence showing that

25   defendant Andreasen had any involvement or wielded any authority with respect to the program

26   list for Unit IV housing.  Even plaintiff acknowledges in his opposition that the "lifer's program"

at CMF does not involve a medical component.  (Pl.'s Opp'n to Defs.' Mot. for Summ. J. at 16.)

Nor has plaintiff provided the court with any evidence that defendant Andreasen removed

plaintiff's name from the list or improperly moved other inmates ahead of him on the list.

Rather, plaintiff merely declares that in March 2005 he was No. 17 on the list and in April 2005

he was No. 13.  (Id. at 16; Pl.'s Decl. Exs. 28 & 29.)  In this regard, plaintiff has failed to provide

the court with any probative evidence establishing the crucial link between his previous litigation

and defendant Andreasen's alleged retaliatory actions.[4]  Finally, plaintiff has failed to

demonstrate that there were no legitimate correctional purposes behind plaintiff's housing

assignment nor has he presented evidence casting doubt on those legitimate correctional purposes

proffered by defense counsel.  Accordingly, because plaintiff has not raised a genuine issue of

material fact as to defendant Andreasen's intent in reaching his decisions regarding plaintiff's

housing assignments or demonstrated that defendant's alleged actions did not reasonably advance

a legitimate correctional goal, defendant Andreasen is entitled to summary judgment in his favor

with respect to plaintiff's First Amendment claim.  See, e.g., Bruce v. Ylst, 351 F.3d 1283, 1288

(9th Cir. 2003).[5]

## OTHER MATTERS

Also pending before the court are plaintiff's second and third motions for

preliminary injunctive relief.  In his second motion, plaintiff claims that Dr. Liou, his primary

---

[4]  In his amended complaint, plaintiff also complains about the "random searching" of his cell that resulted in a false rules violation report.  Although the rules violation was later reversed and dismissed, plaintiff claims that prison officials conducted the search and planted contraband (i.e. scissors) in his cell so his name would be removed from the Unit IV housing list.  (Am. Compl. at 19-23.)  Neither party has directly addressed these allegations in the briefing on the pending motion, but the undersigned notes that this aspect of plaintiff's retaliation claim suffers from the same defects as discussed herein.  Plaintiff has not linked defendant Andreasen to the alleged "random searching."  Rather, he merely speculates that Andreasen was somehow involved.  As noted above, plaintiff's mere speculation is not enough to survive defendants' well-supported motion for summary judgment.

[5]  In light of the undersigned's findings and recommendations that defendant Andreasen is entitled to summary judgment on the merits of the pending motion, the court need not address defense counsel's statute of limitations or qualified immunity arguments.

1   care physician, wrote a functional capacity chrono for him indicating that plaintiff needed to be

2   assigned to a single cell because of his multilevel degenerative disc disease.  Plaintiff argues that

3   prison officials improperly delayed his receipt of the chrono and that an unknown "Dr. G"

4   ultimately rescinded it.  In his third motion, plaintiff informed the court that on May 23, 2008, he

5   received the functional capacity chrono co-signed by Dr. Liou and Chief Medical Officer Dr.

6   Aguillera.  Plaintiff claims that he moved to a single-cell shortly thereafter, but it only had an

7   upper bunk, so he slept on the cell floor without any complaints.  Nevertheless, plaintiff argues

8   that Dr. Aguillera then revised the chrono to indicate that plaintiff needed a lower bunk but not a

9   single cell and moved plaintiff to the I-239 Unit for mentally challenged inmates where the

10  conditions are allegedly dangerous and deplorable.

11          When an inmate seeks injunctive or declaratory relief concerning the prison where

12  he is incarcerated, his claims for such relief become moot when he is no longer subjected to those

13  conditions.  See Weinstein v. Bradford, 423 U.S. 147, 149 (1975) (prisoner's full release from

14  supervision rendered his challenge to Parole Board procedures moot where there was no

15  demonstrated probability that he would again find himself subject to the Board's jurisdiction);

16  Dilley v. Gunn, 64 F.3d 1365, 1368-69 (9th Cir. 1995).  Within two days of filing his third

17  motion for a preliminary injunction, plaintiff filed a notice informing the court that prison

18  officials had moved him to a single-cell with a lower bunk and that he was "safe for NOW!"

19  (Pl.'s Notice Filed June 26, 2008.)  In addition, in his opposition to defendants' motion for

20  summary judgment, plaintiff explained that he is presently housed in a single cell on Unit IV.

21  (Pl.'s Opp'n to Defs.' Mot. for Summ. J. at 17.)  Thus, according to his own allegations, as well

22  as a declaration from the Litigation Coordinator at CMF that accompanied defendants' motion

23  for summary judgment, plaintiff is now housed in cell T-125L, a single cell with a lower bunk.

24  /////

25  /////

26  /////

1   (Id.; Williams Decl. at 2.)  Accordingly, the court will deny plaintiff's motions for preliminary

2   injunctive relief as moot.[6]

3                    Also pending before the court is defense counsel's objections and motion to strike

4   portions of plaintiff's declaration on the grounds that it contains hearsay and speculation.  In light

5   of the recommendation that defendants' motion for summary judgment be granted, the court will

6   deny defendants' motion to strike as unnecessary.

7                                                 **CONCLUSION**

8                    IT IS HEREBY ORDERED that:

9                    1.  Plaintiff's October 9, 2008 request to voluntarily dismiss defendants Khoury

10  and Schwartz (Doc. No. 54) is granted.  Defendants Khoury and Schwartz are dismissed from

11  this action;

12                   2.  Plaintiff's June 2, 2008, and June 24, 2008 motions for preliminary injunctive

13  relief (Doc. Nos. 42 & 45) are denied as moot; and

14  /////

15

16          [6]  Plaintiff does not argue for, nor do his claims for injunctive relief fall within, the
    category of cases that satisfy the exception to the mootness doctrine.  Such an exception applies
17  when "(1) the challenged action was too short in duration to be fully litigated prior to its
    cessation or expiration; and (2) there is a reasonable expectation that the same complaining party
18  will be subjected to the same action again."  First National Bank of Boston v. Bellotti, 435 U.S.
    765, 774 (1978).  See also Dilley v. Gunn, 64 F.3d 1365, 1368-69 (9th Cir. 1995) (prisoner's
19  claim for adequate access to law library was moot upon transfer and did not fall under the two-
    prong exception to mootness doctrine); Wiggins v. Rushen, 760 F.2d 1009 (9th Cir. 1985)
20  (where prisoner was no longer subjected to prison officials' allegedly unconstitutional activity,
    the complaint for injunctive relief became moot); Williams v. Alioto, 549 F.2d 136, 143 (9th Cir.
21  1977) ("A mere speculative possibility of repetition is not is not sufficient.  There must be a
    cognizable danger, a reasonable expectation, of recurrence for the repetition branch of the
22  mootness exception to be satisfied."); 1A C.J.S. Controversies Capable of Repetition Yet
    Evading Review § 82 (2008) (cases satisfying the mootness exception include those actions
23  involving issues such as abortion, elections, residency requirements, benefits, and
    preadjudication detention).  Here, under the first prong, a prisoner's claim that prison officials
24  have denied him adequate medical care is generally not a claim that will evade review.  Under
    the second prong, plaintiff in this case has not demonstrated a reasonable expectation that prison
25  officials will deny him access to a single cell if medically necessary.  It appears that prison
    officials have issued at least six single-cell chronos based on plaintiff's immune system or his
26  degenerative disc disease.

                                                      24

3.  Defendants' October 20, 2008 motion to strike (Doc. No. 57) is denied as unnecessary.

IT IS HEREBY RECOMMENDED that:

1.  Defendants' July 2, 2008 motion for summary judgment (Doc. No. 48) be granted;

2.  This action be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fifteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: January 20, 2009.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:9
jack1893.57

25